# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

**HERBERT R. SMITH**                                                         **PLAINTIFF**

**v.**                               **CIVIL ACTION NO. 5:07CV-P180-R**

**JOHN D. REES** *et al.*                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on initial review of the *pro se* complaint (DN 1), amended complaint (DN 25), and supplements (DNs 44 & 47) pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, a portion of the claims will be dismissed and others will continue.

### I.

At the time Plaintiff filed the complaint, he was a convicted inmate incarcerated in the Kentucky State Penitentiary ("KSP"). He has since been released. He brings suit under 42 U.S.C. § 1983 and names the following individuals as Defendants: 1) John D. Rees, former Commissioner of the Kentucky Department of Corrections (KDOC); 2) Thomas L. Simpson, Warden at the Kentucky State Penitentiary (KSP); 3) Scott A. Haas, M.D., Medical Director of the KDOC; 4) Steve Hiland, M.D., primary care provider at KSP; 5) John Wood, Nurse Service Administrator at KSP; 6) Deb Williams, A.R.N.P. at KSP; 7) Susan Reffett, R.N. at KSP; 8) April Hyatt, R.N. at KSP; 9) Terri Jones, R.N. at KSP; 10) Bruce Bauer, R.N. at KSP; 11) Jim Balcen, R.N. at KSP; 12) Two Unknown Nurses at KSP; 13) Jerry Long, Aramark Supervisor of Food Operations at KSP; and 14) Duke Pettit, Grievance Coordinator at KSP. Plaintiff sues Defendants Rees, Simpson, Haas, Hiland, Wood, Williams, Reffett, Hyatt, and Pettit in both their individual and official capacities and sues Defendants Jones, Bauer, Balcen, the Two

Unknown Nurses, and Long in their individual capacity only. Plaintiff seeks damages and injunctive and declaratory relief.

## II.

Because the plaintiff was a prisoner at the time he filed his complaint and since he is proceeding *in forma pauperis*, this Court must review the instant action. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A; *McGore*, 114 F.3d at 604-05; *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (indicating that although plaintiff is no longer incarcerated, the court must conduct § 1915A screening because of his prisoner status at the time of filing the complaint). Upon review, this Court must dismiss a case if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual

2

allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.

**A.     42 U.S.C. § 1983**

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

**1. Claims for equitable relief**

An inmate's claim for equitable relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another facility. *See Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir.1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996) (same). As the record reflects that Plaintiff has been released from incarceration, his claim for equitable relief must be dismissed.

### 2. All official-capacity claims for damages

A state, its agencies, and state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. *Will*, 491 U.S. at 71; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Daleure v. Commonwealth of Kentucky*, 119 F. Supp. 2d 683, 687 (W.D. Ky. 2000) ( "The Eleventh Amendment protects the Kentucky state government and the Kentucky Department of Corrections from suit."). For these reasons, all official-capacity claims for damages against Defendants Rees, Simpson, Haas, Hiland, Wood, Williams, Reffett, Hyatt, and Pettit must be dismissed.

### 3. Individual-capacity claims for damages

Plaintiff alleges twenty-one Causes of Action. They are addressed below.

#### a. First through Fifth, Tenth, Fifteenth, Sixteenth, Seventeenth, and Twentieth Causes of Action

These Causes of Action pertain to Defendants Rees, Simpson, Haas, Williams, Reffett, Hyatt, and Pettit. A review of the facts alleged in the complaint reveals that Plaintiff seeks to hold Defendants Simpson, Rees, and Haas liable based on their capacities as Warden, Commissioner, and Medical Director, respectively, and based on their responses to grievances. He also seeks to hold the healthcare grievance committee members (Defendants Williams, Reffett, and Hyatt) liable based on their responses to grievances and to hold Defendant

Grievance Coordinator Pettit liable based on his rejection and refusal to process Plaintiff's grievances. These facts are insufficient to subject these Defendants to liability under § 1983.

Defendant Simpson's position as Warden, Defendant Rees' position as Commissioner, and Defendant Dr. Haas' position as Medical Director do not automatically make them liable for the actions of their subordinates. Rather, Plaintiff must prove that these Defendants "'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). In other words, "liability under § 1983 must be based on active unconstitutional behavior." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability." *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003). Thus, the fact that Defendants were aware of Plaintiff's complaints is not enough to subject them to liability under § 1983 for Plaintiff's medical providers' alleged failure to provide Plaintiff with medical treatment. *See, e.g.*, *Brown v. Green*, No. 97-1117, 1997 WL 777979, at *2 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff).

Likewise, Defendants Simpson's, Rees', Haas', Williams', Reffett's, and Hyatt's adjudication of Plaintiff's grievances does not subject them to liability under § 1983. There is

"no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee*, 199 F.3d at 300). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment. *Id.*

Plaintiff also alleges that these Defendants' responses to the grievances "demonstrated a full-blown common law civil conspiracy" to deny him adequate medical treatment. "It is well-

6

settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Plaintiff's allegation of a conspiracy is broad and conclusory and fails to state a claim. He has not alleged that there was a single plan, that the alleged conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury. *See Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985).

For these reasons, the First through Fifth, Tenth, Fifteenth, Sixteenth, Seventeenth, and Twentieth Causes of Action will be dismissed.

### b. Sixth through Ninth Causes of Action

These Causes of Action against Defendant Dr. Hiland revolve around a heart attack that Plaintiff suffered in March 2007. Plaintiff reports that Dr. Hiland was his primary care physician at KSP. He claims that during the time leading up to his heart attack Dr. Hiland conducted inadequate physicals and failed to treat his high cholesterol with medications and a low-cholesterol diet (DN 1). He further claims that following his release from the hospital, Dr. Hiland failed to follow the discharge physician's aftercare orders, such as continuing to provide smoking cessation medication; failed to provide necessary testing to determine whether Plaintiff was suffering from adverse reactions from his medications; and failed to provide proper follow-up care, such as "closer in time examination and tests, prescribing medications, and changing Plaintiff's food diet, in addition to the FBS and 2hr PP glucose (finger stick) every three months" (DN 1). Plaintiff additionally alleges that Dr. Hiland failed to adequately treat his low blood pressure in July 2008 (DN 25); failed to monitor Plaintiff while he was taking Atenolol (DN 44);

7

and failed to prescribe aspirin along with Plaintiff's Plavix resulting in another heart attack in August 2009 (DN 47).

Upon consideration, the Court will allow these Eighth Amendment claims of deliberate indifference to serious medical needs to proceed against Dr. Hiland.

Plaintiff also alleges a Fourteenth Amendment violation by Dr. Hiland. Any Fourteenth Amendment substantive due process claim, however, is effectively absorbed by the Eighth Amendment, as the Eighth Amendment provides the specific textual source governing the claims of deliberate indifference. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Fourteenth Amendment due process claim must therefore be dismissed for failure to state a claim upon which relief may be granted.

### c. Eleventh and Twelfth Causes of Action

Under these Causes of Action, Plaintiff claims that in the months preceding his heart attack and at the time he was experiencing his heart attack, Defendants Jones, Bauer, and Balcen refused to take appropriate and immediate action after Plaintiff informed them of heart attack symptoms; that Defendants Jones and Bauer forced Plaintiff to walk a substantial distance while experiencing these symptoms rather than transporting him by motor vehicle; and that during a physical on March 5, 2007, Defendant Jones missed the vein in Plaintiff's left arm "which hurt very much" in retaliation for Plaintiff's filing of many grievances against KSP medical staff.

The Court will allow the Eighth Amendment claims to proceed against Defendants Jones, Bauer, and Balcen regarding their refusal to take appropriate action with respect to his complaints of heart attack symptoms and against Defendants Jones and Bauer for forcing him to walk a substantial distance while he was having a heart attack.

The Court concludes that Plaintiff's claim against Defendant Jones for missing the vein in his left arm when drawing blood fails to rise to the level of an Eighth Amendment violation and will be dismissed. Further, any Fourteenth Amendment claim will be dismissed as subsumed in the Eighth Amendment claim and must be dismissed. Finally, Plaintiff's claim that Defendant Jones missed the vein in retaliation for his filing grievances is wholly conclusory. Even under the most liberal of construction, the Court finds no facts alleged by Plaintiff connecting his filing of grievances to the alleged adverse action taken by Defendant Jones. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (per curiam). The retaliation claim will, therefore, be dismissed.

### d. Thirteenth and Eighteenth Causes of Action

Plaintiff reports that at the pill-call window on August 11, 2007, he told "the nurse" that his left foot was "swollen real bad and that it was painful to walk on." An inmate behind Plaintiff said it was probably water, but Plaintiff told the nurse that it could be poor circulation or due to his heart attack. The nurse advised Plaintiff that no medical staff would be available to see him until Monday, August 13, 2007, and the nurse did not examine his foot or give him any medication. On August 13, 2007, Plaintiff went to the KSP sick-call window and told two different nurses about the weekend incident and that his left foot was still swollen and painful to walk on. One of the nurses asked Plaintiff if he wanted to see Dr. Hiland. Plaintiff responded

9

"yes if it's not going to cost [me] anything." The nurse advised that it would cost him $3.00, so Plaintiff walked away without medical treatment. He claims that all KSP medical staff know that an inmate does not have to pay any fee prior to receiving medical services if his problem is of an "'emergency nature.'" On August 14, Plaintiff showed his foot to a guard, and the guard logged it in the log book. Plaintiff also submitted grievances regarding these facts, to which Defendants Pettit, Wood, Simpson, and Rees responded at various stages in the grievance process. Plaintiff again went to the sick-call window on September 5, complaining about his swollen left foot "still causing him substantial pain when walking on it," and the nurse at the window said Plaintiff would have to pay a $3.00 fee to receive medical services. During the time he was trying to get treatment for his painful, swollen left leg, he had to walk up and down four floors of stairs several times a day to eat his meals and take his medications.

Responses to grievances attached to Plaintiff's complaint reveal that treatment was not provided to Plaintiff based on his refusal to follow Corrections Policy and Procedure (CPP) 13.2 and sign a CPO for the $3.00 co-pay. Had Plaintiff signed an agreement to pay (CPO), then services would have been provided regardless of his account balance. Plaintiff does not contest this in his grievances. Instead, he claims that his swollen left foot was an "emergency" as defined in CPP 13.2 so that he should not have had to pay for services. He also claims that he only has to pay for medical services if he has the ability to pay, and that although he is not indigent as defined by policy, he does not have the ability to pay for medical services.

As his Thirteenth Cause of Action, Plaintiff claims deliberate indifference to a serious medical need by Unknown Nurse Defendants.

To sustain an Eighth Amendment cause of action under § 1983 for failure to provide medical treatment, a plaintiff must demonstrate that the defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "An Eighth Amendment claim has two components, one objective and one subjective." *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001).

To satisfy the objective component, "'the inmate [must] show that he is incarcerated under conditions posing a substantial risk of serious harm.'" *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical need is sufficiently serious if "facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers." *Blackmore*, 390 F.3d at 898. However, "[t]his 'obviousness' standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs 'may *also* be decided by the *effect* of delay in treatment.'" *Id.* at 897 (first emphasis added) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Examples of the latter branch include claims of "delayed administration of medication . . . or occasional missed doses of medication," *Blackmore*, 390 F.3d at 897; "claims based on a determination by medical personnel that medical treatment was unnecessary," *id.* at 898; and "decisions involving whether the prisoner was treated adequately[,] or whether any delay in providing medical care was harmless." *Id.* In such circumstances, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Blackmore*, 390 F.3d at 898

11

(quoting *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill*, 40 F.3d at 1188)).

To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock*, 273 F.3d at 702-03.

Under Ky. Rev. Stat. Ann. § 197.020(2), the Kentucky Department of Corrections "may impose a reasonable fee for the use of medical facilities by a prisoner who has the ability to pay for the medical and dental care. These funds may be deducted from the prisoner's inmate account. *A prisoner shall not be denied medical or dental treatment because he has insufficient funds in his inmate account*." (Emphasis added). The collection of medical fees has been found constitutional. *See Bailey v. Carter*, 15 F. App'x 254, 251 (6th Cir. 2001). Although Plaintiff maintains in a grievance that he did not have the ability to pay for medical services, the uncontroverted fact is that had Plaintiff signed the agreement to pay (CPO), then medical services would have been provided to him regardless of whether he had the available funds. Plaintiff simply wanted free medical services. The facts, therefore, demonstrate that Plaintiff effectively refused medical treatment for his foot. Further, this is neither a case where a layperson would recognize an immediate need for treatment nor a case where Plaintiff has alleged any detrimental effects.[1] The claims against the Unknown Nurse Defendants will, therefore, be dismissed.

---

[1] Plaintiff filed three amendments, none of which mention any problems with his left foot.

As his Eighteenth Cause of Action, he claims that Defendants Rees, Simpson, Wood, Pettit, and the Unknown Nurses engaged in a conspiracy of deliberate indifference. Plaintiff's claim of conspiracy fails as it is broad and conclusory with its sole basis being that Defendants denied his grievances at various levels of the administrative process. The Eighteenth Cause of Action must also be dismissed.

### e. Fourteenth Cause of Action

Under the Fourteenth Cause of Action, Plaintiff alleges that Defendant Wood refused "to change the conditions under which Plaintiff has to take . . . Plavix"; "to stay within the perimeters of an 'medical emergency'"; to train KSP nursing staff. He further alleges that Defendant Wood's actions "were the result of retaliation over Plaintiff filing many grievances against KSP medical staff."

In the body of the complaint, however, Defendant Wood's actions about which Plaintiff complains all revolve around his informal responses to healthcare grievances filed in November 2006 regarding Plaintiff's experiencing symptoms of a heart attack; in May 2007 regarding medical staff's running out of his prescription medication and substituting with non-prescription medication; in June 2007 with respect to Plaintiff's request to take Plavix and Atenolol unsupervised. Plaintiff also describes Defendant Wood, who is the Nurse Service Administrator, as "administering the total nursing services program which includes establishing, organizing, coordinating, and supervising all activities of the nursing services."

Because Plaintiff is not challenging any direct involvement in his care by Defendant Wood but only Defendant Wood's responses to grievances and since he is seeking to hold Defendant Wood liable based on his capacity as the supervisory nurse, Plaintiff's claims fail

13

against him for the same reasons they fail against Defendants Warden Simpson, Commissioner Rees, and Medical Director Haas. The Fourteenth Cause of Action must, therefore, be dismissed.

### f. Nineteenth Cause of Action

Plaintiff claims that the actions, policies, and practices of Defendants Commissioner Rees, Warden Simpson, and Aramark Supervisor of Food Operations Long "over a continuous long period of time [] deprived Plaintiff of foods and fresh fruits scheduled on the 'Master Food Menu' demonstrated a clear bonding designed to protect Aramark Corp from suffering any adverse reactions from Plaintiff being deprived of an adequate daily nutritional food diet that was attributable to causing Plaintiff to have a continuous high cholesterol level." In the body of the complaint and in attached grievances, Plaintiff complained of receiving a nutritionally inadequate sack lunch following blood work, of receiving inadequate portions of fresh fruit, and of not receiving a fish substitute due to the KSP kitchen being out of the menu item.

While the "deliberate and unnecessary withholding of food essential to normal health can violate the Eighth Amendment," *Cunningham v. Jones*, 567 F.2d 653, 656, 660 (6th Cir. 1977), Plaintiff alleges no direct involvement with respect to his food by Defendants Rees, Simpson, and Long, but attaches grievances indicating that those Defendants were all involved in responding to Plaintiff's grievances regarding the food and service he received by KSP kitchen staff. As discussed above, § 1983 liability does not attach in such instances.

### g. Twenty-First Cause of Action

Plaintiff alleges "ATTEMPTED MURDER" and a conspiracy of attempted murder by Defendants Rees, Simpson, Haas, Hiland, Williams, Reffett, and Hyatt based on Dr. Hiland's

14

alleged refusal to monitor his high cholesterol; Dr. Hiland's, Haas', Williams', Reffett's, and Hyatt's refusal to treat or cause the treatment for his smoking addiction; and for Rees' and Simpson's "illegally allowing those said Defendants . . . to act independently without supervision, management, or overseeing therefrom."  These claims have already been addressed, *supra*.  The claims against Dr. Hiland have been allowed to proceed, and the claims against the other Defendants will be dismissed; and as with all of the other conspiracy claims alleged in the complaint, Plaintiff has failed to plead facts sufficient to support such a claim with any specificity.  Plaintiff's claim of conspiracy again revolves around Defendants' adjudication of his grievances, and he has not shown how these independent decisions constitute a single plan.

**B.     42 U.S.C. § 1985(3)[2]**

Plaintiff additionally claims that various Defendants violated 42 U.S.C. § 1985(3).  To prove a claim of conspiracy in violation of 42 U.S.C. § 1985(3), Plaintiff must prove:  (1) a conspiracy of one or two or more persons: (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or the deprivation of any right or privilege of the United States.  *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).  Plaintiff must also show that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  To state a claim for conspiracy under 42 U.S.C. § 1985(3), there must be specific factual allegations showing the existence of the

---

[2]Plaintiff alleges a violation of § 1985(3) under the Tenth, Eighteenth, Nineteenth, Twentieth, and Twenty-first Causes of Action.

conspiracy as well as allegations that the Defendants acted with the specific intent to deprive Plaintiff equal protection of the law. *Azar v. Conley*, 456 F.2d 1382, 1385 (6th Cir. 1972); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971).

Plaintiff does not allege has not alleged that the conspiracy was motivated by any racial or other class-based animus. Thus, the complaint does not state a cause of action under § 1985(3), and that claim will be dismissed.

### C. State-law claims

Throughout all of his Causes of Action, Plaintiff alleges violations of Sections 2,[3] 3,[4] 10,[5] 17,[6] and/or 254[7] of the Kentucky Constitution; medical malpractice; intentional infliction of emotional distress; and/or violations of Ky. Rev. Stat. Ann. §§ 196.070(1)(a),[8] 197.020(1)(b) and

---

[3] Section 2 of the Kentucky Constitution provides: "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

[4] Section 3 provides: "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services; but no property shall be exempt from taxation except as provided in this Constitution; and every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment."

[5] Under Section 10, "The people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[6] Pursuant to Section 17, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted."

[7] Finally, under Section 254, "The Commonwealth shall maintain control of the discipline, and provide for all supplies, and for the sanitary condition of the convicts, and the labor only of convicts may be leased."

[8] In pertinent part, under Ky. Rev. Stat. Ann. § 196.070(1)(a), "[t]he commissioner of the Department of Corrections shall:[] Supervise and administer . . . the Kentucky State Penitentiary, . . . and the prison industry program within those institutions."

16

(2),[9] 197.510(9) and (26),[10] and 525.070(1)(d).[11]

Upon consideration of the law and Plaintiff's allegations, the Court will allow the claim under Section 17 of the Kentucky Constitution and the claims of medical malpractice and intentional infliction of emotional distress to continue against Defendants Dr. Hiland, Jones, Bauer, and Balcen. All other state-law claims will be dismissed.

---

[9]Pursuant to Ky. Rev. Stat. Ann. § 197.020(1)(b), the Department of Corrections shall: "Promulgate administrative regulations for the character of food and diet of the prisoners; the preservation of the health of the prisoners; . . . the quantity of food and clothing; . . . . Further, under subsection (2) "[t]he department may impose a reasonable fee for the use of medical facilities by a prisoner who has the ability to pay for the medical and dental care. These funds may be deducted from the prisoner's inmate account. A prisoner shall not be denied medical or dental treatment because he has insufficient funds in his inmate account."

[10]Section 197.510 provides, "Any contract entered on or after July 15, 1988, between the state and a private provider for the operation and management of an adult correctional facility shall include terms which comply with at least the following: . . . (9) The adult correctional facility shall comply with all applicable laws and regulations of the local and state government regarding sanitation, food service, safety, and health. Copies of inspections completed by the appropriate authorities shall be sent to the department; . . . (26) The adult correctional facility shall adopt a written policy which shall be implemented to insure that no inmate or group of inmates is in a position of control or authority over other inmates; . . . ."

[11]Under § 525.070, a penal code statute, "(1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: . . . (d) Follows a person in or about a public place or places; . . . ."

## IV. ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED that the 42 U.S.C. § 1983 individual-capacity claims for damages against Defendants Dr. Steve Hiland, Terri Jones, Bruce Bauer, and Jim Balcen under the Eighth Amendment to the U.S. Constitution and the claims against those same Defendants under Section 17 of the Kentucky Constitution and for medical malpractice and intentional infliction of emotional distress shall CONTINUE beyond initial review.**

**IT IS FURTHER ORDERED that all other claims are DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted and/or under §§ 1915(e)(2)(B)(iii) and 1915A(b)(2) for seeking monetary relief from Defendants immune from such relief.

**The Clerk of Court is DIRECTED to terminate the following Defendants as parties to this action: John D. Rees, Thomas L. Simpson, Scott Haas, John Wood, Deb Williams, Jerry Long, Duke Pettit, Susan Reffett, April Hyatt, and the Unknown Nurse Defendants.**

Date:

cc: Plaintiff, *pro se*
    Defendants
    Counsel of record John C. Cummings for continuing Defendants Dr. Steve Hiland, Terri Jones, and William Bruce Bauer
4413.005