UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-180

**HERBERT R. SMITH**                                                                    **PLAINTIFF**

**v.**

**JOHN D. REES, ET AL.**                                                              **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion for Appointment of Counsel, or in the Alternative, Summon Expert Witness (Docket #76) and Motion to Amend Pleadings (Docket #82). Defendants have responded (Docket #78). Plaintiff has replied (Docket #79). This matter is now ripe for adjudication.

## BACKGROUND

At the time Plaintiff filed his Complaint, he was a convicted inmate incarcerated in the Kentucky State Penitentiary ("KSP"). He has since been released. On July 16, 2010, the Court conducted a preliminary review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). The Court permitted Plaintiff to proceed on his 42 U.S.C. § 1983 individual capacity claims for damages against Defendants Dr. Steve Hiland, Terri Jones, Bruce Bauer, and Jim Balcen[1] under the Eighth Amendment to the U.S. Constitution and the claims against those same Defendants under Section 17 of the Kentucky Constitution and for medical malpractice and intentional infliction of emotional distress ("IIED"). All other claims were dismissed.

Plaintiff's Eighth Amendment claims against Dr. Hiland revolve around a heart attack

---

[1]Terri Jones and Bruce Bauer are registered nurses at KSP. Plaintiff voluntarily dismissed all claims against Defendant Balcen on September 27, 2010.

Plaintiff suffered in March of 2007. Plaintiff reports that Dr. Hiland was his primary care physician at KSP. He claims that during the time leading up to his heart attack Dr. Hiland conducted inadequate physicals and failed to treat his high cholesterol with medications and a low-cholesterol diet. He further claims that following his release from the hospital, Dr. Hiland failed to follow the discharge physician's aftercare orders; failed to provide necessary testing to determine whether Plaintiff was suffering from adverse reactions from his medications; and failed to provide proper follow-up care, such as "closer in time examination and tests, prescribing medications, and changing Plaintiff's food diet, in addition to the FBS and 2hr PP glucose (finger stick) every three months." Complaint, DN 1. Plaintiff additionally alleges that Dr. Hiland failed to adequately treat his low blood pressure in July of 2008; failed to monitor Plaintiff while he was taking Atenolol; and failed to prescribe aspirin along with Plaintiff's Plavix resulting in another heart attack in August of 2009. Finally, Plaintiff repeatedly notes that Dr. Hiland refused to prescribe aspirin to prevent his steel stent from clogging. Plaintiff suffered a second heart attack following his release from prison.

Plaintiff's Eighth Amendment claims against Defendants Jones and Bauer allege that these nurses refused to take appropriate and immediate action after Plaintiff informed them of heart attack symptoms and that Defendants Jones and Bauer forced Plaintiff to walk a substantial distance while experiencing these symptoms rather than transporting him by motor vehicle.

For these same instances of conduct, the Court allowed Plaintiff's claim under section 17[2] of the Kentucky Constitution to proceed, as well as Plaintiff's common law tort claims of

---

[2]Pursuant to section 17, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted." KY. CONST. § 17.

medical malpractice and IIED, against Defendants Dr. Hiland, Jones, and Bauer.

Plaintiff filed a motion for summary judgment on August 26, 2010. The Court denied this motion, finding that genuine issues of material fact remained. In addition, the Court noted that Plaintiff could not meet the burden of proof on his medical malpractice claim because he had failed to put forth any expert testimony. Plaintiff filed a motion seeking the appointment of counsel or the appointment of an expert witness. The Court has offered Plaintiff the names of a few attorneys to contact for representation, but Plaintiff's efforts to secure counsel have been unavailing. Plaintiff also seeks leave to amend his pleadings to assert that the medical malpractice claim is so clear that an expert witness is unwarranted in this case.

## DISCUSSION

**I.      Motion to Amend**

The Court first addresses Plaintiff's motion to amend his pleadings to assert that an expert is unnecessary to prove his medical malpractice claim. The Kentucky Supreme Court has summarized the need for an expert in medical malpractice cases as follows:

> Under Kentucky law, a plaintiff alleging medical malpractice is generally required to put forth expert testimony to show that the defendant medical provider failed to conform to the standard of care. *Perkins v. Hausladen*, 8282 S.W.2d 652, 655-56 (Ky. 1992). Expert testimony is not required, however, in *res ipsa loquitur* cases, where "the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it", and in cases where the defendant physician makes certain admissions that make his negligence apparent. *Id.* (*quoting Restatement (Second) of Torts*, Comment b, p. 157). Medical malpractice cases can therefore be divided into two categories: cases where the parties do not dispute the need for expert testimony, which encompass the vast majority of medical malpractice claims, and cases where the plaintiff disputes the need for expert testimony because he contends one of the narrow exceptions applies.

*Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010). Thus, an exception exists "'in

3

situations where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts.'" *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992) (quoting *Jarboe v. Harting*, 297 S.W.2d 775, 778 (Ky. 1965)). This is the exception upon which Plaintiff relies.

Medical malpractice is a form of negligence. A negligence action requires: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). "In medical malpractice cases the plaintiff must prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982) (citing *Blair v. Eblen*, 461 S.W.2d 370 (Ky. 1970)). The burden of proof is upon the plaintiff to establish the applicable standard of care and the breach thereof. *Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. Ct. App. 2007). As noted previously, expert testimony is typically required to meet this burden. *Id.*

Plaintiff's medical malpractice claims stem from the alleged action or inaction of Defendants both prior to and following his March 20, 2007, heart attack. First, Plaintiff alleges that Dr. Hiland was negligent in failing to treat his high cholesterol with medication or a low cholesterol food diet. Despite Plaintiff's assertions to the contrary, the Court finds that expert testimony is necessary to establish the standard of care regarding the treatment of high cholesterol. While most laymen are generally aware of a link between high cholesterol and heart disease, the treatment of high cholesterol is not within the common knowledge of most people. Similarly, Plaintiff's next claim that Dr. Hiland was negligent in refusing to prescribe aspirin

4

after Plaintiff's heart attack is not the type of claim by which a jury could infer negligence and causation. Thus, an expert will also be required to testify as to the standard of care required to prevent a steel stent from clogging.

Plaintiff's next argument asserts that Dr. Hiland was negligent in prescribing Atenolol instead of Metroprolol (as prescribed by Dr. Gwinn) and in failing to check Plaintiff's pulse rate while he was on Atenolol. Plaintiff asserts that he suffered fainting spells, swollen feet, soreness in his hip and back, and pain in his leg as a result of his low pulse rate while he was on Atenolol. Obviously the side effects of Atenolol and the appropriate treatment of a patient on Atenolol are not within the common knowledge of most laymen such that they could infer negligence. Thus, an expert is required as to this claim.

According to Plaintiff, he complained to Defendants Dr. Hiland, Terri Jones, and Bruce Bauer on several occasions that he was experiencing heart attack symptoms and they failed to treat or examine him. Although a laymen may be generally aware that if someone is experiencing heart attack symptoms they should receive emergency medical treatment, an expert would be necessary to identify Plaintiff's complaints as symptoms of a heart attack instead of some other medical issue. Accordingly, an expert is also required as to this claim.

Finally, Plaintiff argues that Defendants Terri Jones and Bruce Bauer were negligent in forcing Plaintiff to walk from the prison chow hall to the prison hospital while he was suffering from a heart attack. The Court finds that expert testimony is required to establish the duty of care and causation as to this claim, especially as to whether causing Plaintiff to walk at this time could have resulted in further injury. This is not within the common knowledge of a layman.

The Court finds that all of Plaintiff's medical malpractice claims will require expert

testimony at trial. Accordingly, Plaintiff's motion to amend is DENIED. The Court now considers Plaintiff's motion to appoint counsel or an expert to aid in this litigation.

## II. Appointment of Counsel

Plaintiff previously sought appointment of counsel in this case on June 5, 2008. The Court denied Plaintiff's request, noting:

> [I]n a civil case such as this § 1983 action, appointment of counsel is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Title 28 of the United States Code, Section 1915(e)(1) indicates that court-enlisted assistance of counsel is not mandatory but merely a matter of discretion. *See, e.g.*, *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) ("'[T]he appointment of counsel in a civil case is, as is the privilege of proceeding *in forma pauperis*, a matter within the discretion of the court. It is a privilege and not a right.") (quoting *United States v. Madden*, 352 F.2d 792, 793 (9th Cir. 1965)). "'It is a privilege that is justified only by exceptional circumstances.'" *Lavado*, 992 F.2d at 606 (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). "In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.' This generally involves a determination of the 'complexity of the factual and legal issues involved.'" *Id.* (citations omitted).
>
> Although claimed otherwise by Plaintiff, the Court finds that the complexity of the issues in this case does not necessitate the appointment of counsel at this early stage in the litigation. Further, based on a review of the many documents filed by Plaintiff thus far, it appears that he is articulate and able to represent himself sufficiently. The Court, therefore, finds that Plaintiff has not set forth an "exceptional circumstances" warranting appointment of counsel at this time.

Mem. & Order, DN 30, p. 4-5. Plaintiff now asserts that appointment of counsel is necessary so that he can obtain expert testimony for his case.

While Plaintiff is no longer a prisoner, he has indicated to the Court that he remains indigent and has unsuccessfully attempted to obtain expert testimony on his own. Without an expert, Plaintiff's claims for medical malpractice will likely fail. At the same time, however, Plaintiff has thus far been unsuccessful in obtaining an attorney, due mostly to the high expense

6

of obtaining an expert for this case. In order to determine whether a Plaintiff has established "exceptional circumstances" such that the Court should appoint counsel, the Court feels it is necessary to further analyze the merits of Plaintiff's medical malpractice claims which require expert testimony. "As a general rule, counsel should be appointed in civil cases only if a litigant has made 'a threshold showing of some likelihood of merit.'" *Montgomery v. Miller*, No. , 2008 WL 4853336, at *2 (W.D. Tenn. Nov. 6, 2008) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)).

As noted in the prior section, Plaintiff's first claim focuses on the failure of Dr. Hiland to treat his high cholesterol prior to his first heart attack. The evidence indicates, however, that Plaintiff refused scheduled physicals and lab tests on several occasions. Furthermore, according to Defendants, Plaintiff's physical and blood work done approximately two weeks prior to his heart attack were normal. Thus, the likelihood of success on this claim is questionable.

Next, Plaintiff asserts that Dr. Hiland was negligent in not prescribing aspirin and in failing to monitor the side effects of Atenolol after Plaintiff's heart attack. Evidence exists that aspirin was available from the commissary for Plaintiff's purchase. Further, Dr. Hiland prescribed Atenolol instead of Metroprolol, but Plaintiff acknowledges that both serve the same purpose. Plaintiff's injuries as a result of Atenolol are certainly questionable, as it may be hard for Plaintiff to establish that fainting spells, swollen feet, soreness, pain, or any other injury were caused by Dr. Hiland's failure to monitor his heart rate.

Plaintiff's claim that he was suffering heart attack symptoms and Defendants failed to treat him is also likely to fail. Plaintiff acknowledges that he reported his symptoms to one of the nurses, who diagnosed him with gas but also directed him to go on sick call and ask for an

7

EKG, which Plaintiff failed to do. The second time he reported such symptoms, he decided to just wait for his upcoming yearly physical to talk to the doctor about his symptoms. According to Dr. Hiland's response to Plaintiff's grievance on these issues, Plaintiff never signed up for sick call for any reason and he didn't raise any complaints at his yearly physical.

Finally, Plaintiff's claim that he was forced to walk while having a heart attack is unlikely to succeed. Whether or not Defendants Bauer and Jones had a duty to prevent Plaintiff from walking at that time, Plaintiff has not alleged that he suffered any further harm than he would have if he had remained in the chow hall and waited for a vehicle to transport him to the prison infirmary. In fact, Defendants assert that Plaintiff received treatment sooner than he would have if he had waited for a transport vehicle.

Based on the foregoing, the Court finds that Plaintiffs' medical malpractice claims are questionable and appear to lack merit. The Court believes Plaintiff has failed to present exceptional circumstances such that the Court should appoint an attorney to assist Plaintiff in his case and in obtaining an expert witness.

### III.  Appointment of Expert Witness

In order for Plaintiff to succeed on a traditional medical malpractice claim, he must present expert testimony concerning the applicable standard of care and breach thereof. *See Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. Ct. App. 2007). Plaintiff is a pro se litigant proceeding *in forma pauperis*. Plaintiff asserts that he is unable to obtain expert testimony and has asked the Court to appoint an expert.

Under Federal Rule of Evidence 706(a), the Court may appoint an expert witness agreed upon by the parties or of the Court's own selection. Fed. R. Evid. 706(a). "Expert witnesses so

appointed are entitled to reasonable compensation in whatever sum the court may allow." Fed. R. Evid. 706(b). In civil actions, "compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charged in like manner as other costs." *Id.* Several courts have noted that the Court's authority "extends to excusing indigent parties from paying their share of the costs." *Davis v. United States*, 266 F. App'x 148, 150 (3d Cir. 2008) (citations omitted). This includes the discretion to "apportion all the costs of an expert to one side." *Ledford v. Sullivan*, 105 F.3d 354, 360 (7th Cir. 1997); *accord Webster v. Sowders*, 846 F.2d 1032, 1038 (6th Cir. 1988) ("A District Court has authority to apportion costs under this rule, including excusing impecunious parties from their share.").

In this case, because Plaintiff is indigent, Defendants would be required to pay the entire fee were the Court to appoint an expert. The Court doubts whether such a burden is fair or appropriate in this case.³ In addition, despite the fact that Plaintiff's medical malpractice claims may fail without expert testimony, the Court is not bound to appoint an expert under Rule 706. *See Gaviria v. Reynolds*, 476 F.3d 940, 945 (D.C. Cir. 2007). In *Gaviria*, where a court-appointed attorney was unable to produce substantiating evidence and acknowledged that his contact with many experts was unproductive, the district court did not abuse its discretion in refusing to appoint an expert witness and granting summary judgment. *Id.* at 945-46.

Because of the high costs associated with hiring an expert, Plaintiff's difficulties in retaining an expert thus far, and the questionable nature of Plaintiff's medical malpractice claims, the Court declines to appoint an expert witness. Because the Court will not appoint an

---

³According to the Fifth Circuit, a district court lacks authority under the *in forma pauperis* statute to appoint an expert witness. *See Pedraza v. Jones*, 71 F.3d 194, 196 (5th Cir. 1995).

9

expert witness and Plaintiff has indicated that he cannot obtain an expert witness on his own, Plaintiff's medical malpractice claims must be dismissed.

IV.     **Reinstatement of Claims**

As a final matter, Plaintiff asks the Court to reinstate his claims for intentional infliction of emotional distress and deliberate indifference under the Eighth Amendment. The Court notes that these claims have not been dismissed. Rather, the Court ruled on Plaintiff's motion for summary judgment on January 18, 2011, and found that Plaintiff had failed to establish that summary judgment should be granted in his favor. Defendants have not moved for summary judgment. Accordingly, the Court has not dismissed any claims (with the exception of the medical malpractice claims dismissed in *this* opinion) and there is no need to "reinstate" these claims. The Court will set deadlines for future motions in the upcoming conference call.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's Motion for Appointment of Counsel, or in the Alternative, Summon Expert Witness is DENIED, and Plaintiff's Motion to Amend is DENIED.