# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:07-CV-00180-R

**HERBERT R. SMITH**                                                                 **PLAINTIFF**

v.

**JOHN D. REES,** *et al.*                                                            **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment. DN 86. Plaintiff Herbert Smith has failed to respond. Because time to respond has passed, this matter is now ripe for adjudication. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

At the time Plaintiff filed his Complaint he was a convicted inmate incarcerated in the Kentucky State Penitentiary ("KSP"). He has since been released. On July 16, 2010, the Court conducted a preliminary review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). The Court permitted Plaintiff to proceed on his 42 U.S.C. § 1983 individual capacity claims for damages against Defendants Dr. Steve Hiland, Terri Jones, Bruce Bauer, and Jim Balcen[1] under the Eighth Amendment to the U.S. Constitution and against the same Defendants under Section 17 of the Kentucky Constitution, for medical malpractice,[2] and for intentional infliction of emotional distress ("IIED"). All other claims have previously been dismissed.

Plaintiff's Eighth Amendment claim against Dr. Hiland revolves around a heart attack Plaintiff suffered in March of 2007. Plaintiff reports that Dr. Hiland was his primary care physician at KSP. He claims that during the time leading up to his heart attack Dr. Hiland

---

[1] Plaintiff Smith voluntarily dismissed his claims against Defendant Jim Balcen on September 27, 2010. DN 65.
[2] Plaintiff Smith's claim for medical malpractice was dismissed by the Court on July 28, 2011. DN 84.

1

conducted inadequate physicals and failed to treat his high cholesterol with medications and a low-cholesterol diet. He further claims that following his release from the hospital, Dr. Hiland failed to follow the discharging physician's aftercare orders, such as continuing to provide smoking cessation medication; failed to provide necessary testing to determine whether Plaintiff was suffering from adverse reactions to his medications; and failed to provide proper follow-up care, such as "closer in time examination and tests, prescribing medications, and changing Plaintiff's food diet, in addition to the FBS and 2hr PP glucose (finger stick) every three months." Complaint, DN 1. Plaintiff additionally alleges that Dr. Hiland failed to adequately treat his low blood pressure in July of 2008; failed to monitor Plaintiff while he was taking Atenolol; and failed to prescribe aspirin along with Plaintiff's Plavix, all allegedly resulting in another heart attack in August of 2009.

The Plaintiff's Eighth Amendment claim against Defendants Jones and Bauer alleges that these nurses refused to take appropriate and immediate action after the Plaintiff informed them of heart attack symptoms and that they forced the Plaintiff to walk a substantial distance while experiencing these symptoms rather than transporting him by motor vehicle to the prison infirmary.

For these same instances of conduct, the Court allowed the Plaintiff's claim under section 17 of the Kentucky Constitution to proceed, as well as the Plaintiff's common law tort claim of IIED against Defendants Dr. Hiland, Jones, and Bauer.

The Defendants have filed the present Motion for Summary Judgment, claiming that there are no disputes as to any material facts in this case and that they are entitled to judgment as a matter of law.

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

**DISCUSSION**

As stated above, the time has passed for Plaintiff Herbert Smith to respond to the Defendants' Motion for Summary Judgment.[3] The Defendants' motion was filed on August 3, 2011, and Smith has had more than two months to respond but has failed to do so. The law

---

[3] Defendants' motion is captioned as a motion for summary judgment but states in its text that it is a motion to dismiss. The Court treats the Defendants' motion as a motion for summary judgment because the time for filing a motion to dismiss has passed and the present motion for summary judgment relies on previously submitted evidence that is outside of the pleadings.

3

requires Smith to present more than a mere scintilla of evidence in support of his position, which he has not done, and this Court must grant the Defendants' motion. *See Hartsel*, 87 F.3d at 799. Notwithstanding Smith's failure to reply, this Court believes that the facts in this case do not present an issue of material fact upon which a reasonable jury could find for the Plaintiff on any of his constitutional or common law claims.

## I. <u>Deliberately Indifferent Medical Care.</u>

Plaintiff Smith claims that the Defendants exhibited deliberate indifference to his serious medical needs at various points during his incarceration, violating his rights under the Eighth Amendment of the U.S. Constitution and Section 17 of the Kentucky Constitution.[4] To establish a claim under the Eighth Amendment, a plaintiff must demonstrate "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is judged objectively and subjectively. *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Under the objective prong, an inmate must demonstrate a "sufficiently serious medical need" which is obvious to a layperson. *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (internal citations omitted). To demonstrate the subjective prong, the inmate must show that the official knew of and disregarded an excessive risk to the inmate's health and safety. *Id.* An accident, "inadvertent failure to provide adequate medical care," or an act of negligence does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 105. The Court will address both the objective and subjective prongs of Smith's Eighth Amendment claim.

---

[4] The legal analysis for Plaintiff's claims under the Eighth Amendment and Section 17 of the Kentucky Constitution is the same. *See Simms v. City of Harrodsburg*, 2007 U.S. Dist. LEXIS 70250, *15 (E.D. Ky. Sept. 21, 2007)("[Section 17 of the Kentucky Constitution] is nearly identical in language to the Eighth Amendment of the United States Constitution, and it has been treated very similarly by Kentucky Courts.")(citing *Workman v. Commonwealth*, 429 S.W.2d 374, 376 (Ky. 1968)); *Riley v. Commonwealth*, 120 S.W.3d 622, 633 (Ky. 2003)("We regard [the] variation in phraseology [between the Eighth Amendment and the Section 17 of the Kentucky Constitution] as a distinction without a difference."). As such, the Court's analysis of the Plaintiff's Eighth Amendment claims is equally applicable to the claims arising under Section 17.

### A. The Objective Prong of Smith's Eighth Amendment Claim.

Under the first prong of an Eighth Amendment claim for deliberate indifference, a plaintiff must objectively show a sufficiently serious medical need. "Such a medical need has been defined as one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones v. Muskegon Cnty*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks and citations omitted). In the present case, Smith claims that the Defendants were deliberately indifferent to his serious medical needs before, during, and after he suffered a heart attack at the Kentucky State Penitentiary on March 20, 2007.

#### i. Sufficiently Serious Medical Need Prior to March 20, 2007.

Smith has failed to put forth any evidence that, prior to his heart attack, he was objectively suffering from a serious medical need. In fact, according to Plaintiff's own statements in his Complaint, and according to his medical records previously submitted by the Defendants, Plaintiff refused to have a yearly physical for at least seven of the eleven years between 1996 and 2007. *See* DN 1-2, p. 8; DN 67-2. In his Complaint, the Plaintiff plainly states that such physicals "are futile in determining any certain type of ailment [I] may have, including the ailment in this case . . . ." DN 1-2, p. 8. Twelve days before his March 20, 2007, heart attack, Smith broke from his practice of refusing a physical and allowed Dr. Hiland to examine him. *See* DN 67-3. Upon examination, Dr. Hiland noted that "[f]indings are all normal." *Id.* at p. 1. Most significantly, Dr. Hiland specifically recorded that Smith's heart had a "regular rate and rhythm, no murmurs, rubs, or gallops." *Id.* at p. 2. All in all, the evidence in this case shows that Smith was not suffering from a serious medical need before his heart attack, and he has not presented a scintilla of evidence that would persuade this Court otherwise.

Therefore, the Court finds that Smith has failed to show a sufficiently serious medical need, and deliberate indifference in the face of such need, prior to his March 20, 2007, heart attack.

### ii. Sufficiently Serious Medical Need on March 20, 2007.

On March 20, 2007, at approximately 12:20pm, Plaintiff Smith suffered a heart attack in the kitchen area/dinning facility at the Kentucky State Penitentiary (KSP). *See* DN 67-6, p. 6. Defendant Bruce Bauer, a nurse at KSP, recorded actions taken by the medical staff during this event. *See* DN 67-6. There is no disputing that a heart attack constitutes a sufficiently serious medical need under the objective prong of a deliberate indifference claim. A heart attack is a type of condition or injury that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones*, 625 F.3d at 941 (internal quotation marks and citations omitted). Notwithstanding the fact that Smith's heart attack fulfills the objective prong of the deliberate indifference analysis, he also bears the burden of showing the subjective prong of the analysis. As shown below, Smith has not demonstrated that the actions by the medical staff in response to his heart attack were wanton in any fashion. Thus, although the Court finds that Smith's heart attack was a sufficiently serious medical need for the objective component of deliberate indifference, Smith's claim will ultimately fail because he has not demonstrated, by a scintilla of evidence, that the subjective component was present.

### iii. Sufficiently Serious Medical Need After March 20, 2007.

Plaintiff Smith was released from federal and state custody on or about June 2, 2009. He allegedly suffered a second heart attack on August 24, 2009, while living in Ohio. Smith claims that his heart attacks, including the one suffered after being released from incarceration, "were due SOLELY to illegal and prohibited actions of [the Defendants]." DN 58-2, p. 2 (emphasis original). Essentially the Plaintiff claims that his care (or lack thereof), while in custody after his

6

first heart attack, directly resulted in the second one. This argument must fail. First and foremost, a former inmate cannot assert an Eighth Amendment claim for injuries he experience after leaving custody when such injuries were not the result of action by the government. The government assumes a duty to protect individuals when it takes them into custody because it deprives them of the ability to freely care for themselves. The government is absolved of this duty when a person is no longer in custody.

> When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--e.g., food, clothing, shelter, medical care, and reasonable safety--it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*Davis v. Brady*, 143 F.3d 1021, 1024 (6th Cir. 1998) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). The Eighth Amendment protects individuals from cruel and unusual punishment during incarceration, which cannot be inflicted once an inmate serves his term and leaves the confines of a correctional institution. Thus, Smith cannot pursue a claim for deliberate indifference regarding his second heart attack because he was not an inmate when he suffered it.

Although the Defendants cannot be held liable for Plaintiff's injuries suffered outside of incarceration, Smith claims that the medical care he received after his first heart attack, but while he was still in prison, led directly to his second heart attack. Smith alleges that the Defendants, specifically Dr. Hiland, failed to provide proper medical care following his first heart attack, did not give the Plaintiff proper medications, and did not give him a heart-healthy diet that would have helped prevent future heart attacks. Plaintiff's allegations are in essence a claim for medical malpractice and negligent diagnosis and treatment. Plaintiff's claims are not supported

7

by the medical records submitted by the Defendants. *See* DN 67-9. Additionally, and more importantly, such claims are not cognizable under the Eighth Amendment.

Precedent distinguishes between violations under the Eighth Amendment for deliberate indifference and situations where a prisoner has been the recipient of inadequate medical treatment. The Sixth Circuit has cautioned that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). As stated by the U.S. Supreme Court:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). The record is clear that Plaintiff received medical care in the form of medication and follow-up visits by the Defendants and others on the prison's medical staff after his March 20, 2007, heart attack. This Court will not second-guess the judgment of these medical professionals. *See id.* at 107-08. As such, Smith has failed to demonstrate, by a scintilla of evidence, deliberately indifferent medical care during the period he was incarcerated after his first heart attack.

Summarizing the objective prong of Plaintiff's Eighth Amendment claim, Smith has not shown a sufficiently serious medical need during his pre- or post-heart attack periods of imprisonment. Additionally, the Defendants cannot be held liable under the Eighth Amendment

for injuries Plaintiff suffered after his release from custody. Finally, Plaintiff's heart attack on March 20, 2007, was the type of sufficiently serious medical need contemplated by the objective prong of the deliberate indifference analysis. Despite this fact, Plaintiff, as shown below, has failed to demonstrate that his medical need was also accompanied by the necessary subjective prong of the Eighth Amendment analysis.

### B. The Subjective Prong of Smith's Eighth Amendment Claim.

A deliberate indifference claim under the Eighth Amendment is judged objectively and subjectively. *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The Court has shown above that only one part of Plaintiff Smith's claims, the heart attack he suffered on March 20, 2007, fulfilled the objective prong of the deliberate indifference analysis. The Court now turns to the subjective prong and must decide whether the Defendants acted with a requisite level of culpability in the face of the Plaintiff's sufficiently serious medical need, so as to allow Plaintiff to recover on his Eighth Amendment claim.

In discussing the subjective component of deliberate indifference, the Sixth Circuit stated:

> Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. However, the serious conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

*Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 873 (1994). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Id.* (citing *Estelle,* 429 U.S. at 104).

In the present case, the Court finds no indication of wantonness or "deliberateness tantamount to intent to punish" by the Defendants. Smith suffered his heart attack at approximately 12:20pm on March 20, 2007. DN 67-6, p. 6. Medical staff, including Defendant Bauer, arrived to Plaintiff's location in the kitchen by 12:25pm and began administering medical care. *Id.* By 12:29pm, Plaintiff was in the prison's infirmary, receiving more medical care and undergoing a series of tests. *Id.* By 12:48pm, emergency medical services ("EMS") had been notified that Plaintiff needed to be transported to a local hospital, and by 1:05pm, Smith was in route with the EMS to the hospital. There is no indication of wantonness or intent to punish in any of these actions. In fact, the Defendants likely saved the Plaintiff's life or prevented further debilitating injury.

The core of Smith's deliberate indifference claim is that the Defendants caused additional injuries by making him walk from the kitchen to the infirmary while he was suffering a heart attack. He claims the fact that he was made to walk to the infirmary, instead of being driven in a motor vehicle, is evidence of Defendants' subjective intent to inflict pain on him in violation of the Eighth Amendment. The Defendants do not provide any evidence about how far the Plaintiff had to walk in order to get from the kitchen to the infirmary, but in his Complaint, Smith claims that it was approximately 250 yards. *See* DN 1-3, p. 1. In response, Defendants point out that Smith began receiving medical treatment in the kitchen at 12:25pm, was in the infirmary by 12:29pm, and the transit time between the two locations was inconsequential. *See* DN 67-6, p. 6. Additionally, Defendants claim that "it would [have been] difficult and time-consuming to get a motor vehicle into the kitchen." DN 86, p. 5. Thus, by having Plaintiff walk, the Defendants claim they took the course of action which allowed him to receive medical treatment in the quickest manner possible.

The Court finds that the Defendants did not act with wantonness or intent to punish by having the Plaintiff walk from the kitchen to the infirmary. The Defendants began treating the Plaintiff promptly after being called by the presiding correctional officer, and there is no evidence in the record that tends to show that the Defendants acted with any culpability that would indicate a violation of the subjective prong of the deliberate indifference analysis. Although Plaintiff Smith suffered a sufficiently serious medical need when he had heart attack on March 20, 2007, he has failed to put forth any evidence, and the record contains no indications, that the Defendants acted with any type of culpability toward him. In short, Smith has failed to show that the subjective prong of a deliberate indifference claim was violated. There is no genuine issue of material fact on this issue, and the Defendants must be granted summary judgment as to Plaintiff's deliberate indifference claim.

## II.    Intentional Infliction of Emotional Distress.

In addition to a claim under the Eighth Amendment, Plaintiff Smith also filed a claim for the intentional infliction of emotional distress ("IIED") by the Defendants. The factual basis for Smith's IIED claim is the same series of events described above, namely that he did not receive adequate medical care prior to or after his heart attack and that the Defendants made him walk to the infirmary while he was having a heart attack instead of being transported there by motor vehicle.

The intentional infliction of emotional distress is a state law tort claim, and this Court has supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367. Kentucky has adopted the Restatement (Second) of Torts position on IIED claims. *See Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984) (adopting Restatement (Second) of Torts § 46 into Kentucky law). The Restatement advises, "One who by extreme and outrageous conduct intentionally or recklessly

causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." RESTATEMENT (SECOND) OF TORTS § 46(1) (1965). In Kentucky, a prima facie case of IIED requires that:

1) the wrongdoer's conduct must be intentional or reckless;

2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;

3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and

4) the emotional distress must be severe.

*Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004) (citing *Humana of Ky. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990)); *Osborne v. Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000). A straightforward application of these factors to the facts of this case shows that the Defendants are not liable to Smith for IIED.

The Plaintiff has not shown that the Defendants' conduct was "outrageous and intolerable." The Plaintiff, by his own admission in his Complaint, refused to see Dr. Hiland and undergo a yearly physical for the majority of the years between 1996 and 2007. Despite this fact, Plaintiff claims that Dr. Hiland's failure to treat him somehow rose to the level of IIED. After Plaintiff's heart attack, he received medication and follow-up treatment, but because it was not the type that he wanted or thought appropriate, Smith claims that IIED was committed on him by Dr. Hiland. Neither Dr. Hiland's failure to examine a prisoner who refused examination nor Dr. Hiland's selected course of treatment was "outrageous or intolerable."

Similarly, Smith claims that Defendants Jones and Bauer's actions against him were IIED. According to Smith, Defendant Jones intentionally missed a vein in his arm when drawing blood for the express purpose of causing him pain, and Defendants Jones and Bauer made him

walk from the kitchen to the infirmary, while he was having a heart attack, solely to cause him more pain and greater injury. Once again, however, the record fails to support these claims, and the Plaintiff has not put forth any evidence to the contrary. When considering "outrageous and intolerable" conduct, "'[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Stringer*, 151 S.W.3d at 789 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). The Defendants' conduct in this case clearly did not rise to the level of outrage required for an IIED case to proceed.

In addition to failing to show outrageous and intolerable conduct, Smith has not demonstrated that he suffered from severe emotional distress. Simply because Smith asserts that he suffered such stress does not make it so.

> It is only where [emotional disress] is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

RESTATEMENT (SECOND) OF TORTS § 46 cmt. j. (1965). According to Smith, he suffered emotional distress after his first heart attack when the treating physician told him that if he did not stop smoking it would kill him. *See* DN 1-3, p. 2. Smith's stress allegedly became severe when, upon returning to the prison, he claims the Defendants did not give him smoking suppression medications or treatments. Failure to help Smith stop smoking was not outrageous conduct giving rise to an IIED claim, nor could it reasonably result in severe emotional distress. "The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress . . . ." RESTATEMENT (SECOND) OF TORTS § 46 cmt. j. (1965).

13

The plaintiff has made no showing that the actions by the Defendants or any other facts of this case would rise to the level of IIED. The standard for establishing an IIED claim is high, and Smith has not asserts facts or presented evidence that would lift him over this substantial hurdle. The Defendants must be granted summary judgment on the issue of intentional infliction of emotional distress.

## CONCLUSION

Plaintiff Herbert Smith has failed to timely respond to the Defendants' Motion for Summary Judgment. In addition, the Defendants have shown that there is no genuine issue of material fact that they violated Smith's Eighth Amendment rights by exhibiting deliberate indifference toward his serious medical needs. Finally, the Defendants have also shown that there is no genuine issue of material fact that they did not act with outrageous and intolerable conduct toward Smith that would rise to the level of intentional infliction of emotional distress. For the foregoing reasons Defendants' Motion for Summary Judgment is GRANTED. An appropriate order shall issue.